IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

        **v.**            **Criminal No.** 02-074 (FAB)

GUILLERMO JOSÉ VÁZQUEZ,

    **Defendant.**

**OPINION AND ORDER**

BESOSA, District Judge.

    Defendant Guillermo José Vázquez ("Vázquez") moves the Court for a sentence reduction pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). (Docket No. 64.) For the following reasons, his motion for compassionate release is **DENIED**.

**I.  BACKGROUND**

    On December 26, 2000, at around 1:00 a.m., Dayla Dávila-Carmona and Carlos Ocasio-Ríos were returning to Ocasio-Ríos' residence after visiting friends and family on Christmas night. (Docket No. 22 at p. 2.) After they got out of the car, Vázquez and another individual drove up to the residence. Id. at p. 3. Vázquez got out of his car and approached Dávila-Carmona and Ocasio-Ríos while aiming a firearm at them. Id. He robbed them of all their money and took Dávila-Carmona's gold necklace. Id. He then took their car keys and got in their car. Id. Right

Criminal No. 02-074 (FAB)                                          2

before driving away, he pointed his gun at the two victims and
fired.  Id.  Ocasio-Ríos was struck by the bullet, and he died the
next day from the injury.  Id.

Vázquez was arrested on January 5, 2001.  Id. at p. 5.  He
was 16 years old at the time of the offense, but had turned 17
between the offense and his arrest.  See Docket No. 64 at p. 10.
He was transferred to criminal prosecution as an adult pursuant to
18 U.S.C. § 5032 by order of the presiding judge, Hon. Carmen C.
Cerezo.  See Case No. 01-cr-009, Docket No. 94.  A federal grand
jury returned an indictment charging him with two counts of
carjacking in violation of 18 U.S.C. § 2119 (counts one and two),
and one count of discharging a firearm during and in relation to
a crime of violence in violation of 18 U.S.C. § 924(j)(1) (count
three).  (Docket No. 1.)  Pursuant to a plea agreement, he pled
guilty to count two (the December 26 carjacking) and the other
counts were dropped.  See Docket No. 18.  The plea agreement
stipulated Vázquez's total adjusted offense level of forty, after
taking into account a three-point reduction for his acceptance of
responsibility.  Id. at p. 3.

Vázquez was sentenced to 365 months of imprisonment, which
was at the high end of his guideline range of 292-365 months.  See
Docket Nos. 30 at p. 2; 30-1 at p. 1.  He did not receive any
criminal history points - while he was previously arrested for

armed robbery and firearm violations in December 1999, the charges
were dismissed because the police officers failed to appear at the
hearings.  See Docket No. 22 at p. 9.  At sentencing, Judge Cerezo
noted the "vicious nature of the murder of defendant's victim and
the destruction brought upon the victim's family" in deciding to
sentence him at the top of the guideline range.  (Docket No. 30-1
at p. 2.)  Judge Cerezo did not comment on Vázquez's youth at the
time of the offense as a potential mitigating factor.  Id.

     Vázquez has been serving his sentence ever since.  The Bureau
of Prisons has, at various points, moved him between different
facilities, and he is currently incarcerated at USP Victorville in
California.  See Docket No. 64-2 at pp. 1, 28.  He has incurred in
twenty-five disciplinary infractions in the twenty-four years he
has been imprisoned.  Id. at pp. 12-20.  Most (fourteen) have been
for drug-related offenses, the last of which occurred in 2018.
Id.  Six, however, were for engaging in fights with other inmates,
most recently in April 2024.  Id.  On the other hand, he has
completed numerous educational and rehabilitative courses while
incarcerated, id. at pp. 1-3, and the BOP classifies him as low-
risk for recidivism.  Id. at p. 5.  He is currently scheduled to
be released in October 2028.  Id. at p. 1.

     On February 24, 2025, Vázquez filed a *pro se* motion for
compassionate release in Spanish, after which the Federal Public

Defender was appointed to represent him.  <u>See</u> Docket Nos. 46; 49.
Through counsel, he subsequently filed the current motion for
compassionate release on May 21, 2025, along with a brief
correction.  <u>See</u> Docket Nos. 64; 67.  The government opposed his
motion (Docket No. 77), and Vázquez replied.  (Docket No. 83.)

## II.  LEGAL STANDARD

The compassionate release statute, 18 U.S.C. § 3582(c)(1),
"carve[s] out a narrow exception to the general rule that the court
may not modify a term of imprisonment once it has been imposed."
<u>United States v. Saccoccia</u>, 10 F.4th 1, 3 (1st Cir. 2021).  The
statute allows incarcerated individuals to make requests for
sentence reductions to a court once they have exhausted
administrative remedies with the Bureau of Prisons ("BOP").  <u>See</u>
18 U.S.C. § 3582(c)(1)(A).  To exhaust administrative remedies, a
defendant must first request from his or her warden that the BOP
file a motion for compassionate release on his or her behalf.  <u>See</u>
<u>id.</u>  If the warden refuses, "the defendant may only file a motion
in federal court if he has either (1) fully exhausted all
administrative rights to appeal the BOP's failure to bring a motion
on his behalf; or (2) waited thirty [] days from the receipt of
his request by the warden of [his] facility, whichever is earlier."
<u>United States v. Morales</u>, Crim. No. 95-235 (MAJ), 2025 U.S. Dist.
LEXIS 13217, at *5 (D.P.R. Jan. 24, 2025) (Morgan, M.J.) (citing

18 U.S.C. § 3582(c)(1)(A)).  The defendant has the burden of
showing that he exhausted administrative remedies prior to
bringing his claim before the Court.  See United States v. Wells,
Crim. No. 13-151, 2020 U.S. Dist. LEXIS 139425, at *10 (E.D. La.
Aug. 5, 2020).  Exhaustion of administrative remedies, while
mandatory, is merely a "claim-processing rule" rather than a
jurisdictional requirement.  United States v. Texeira-Nieves, 23
F.4th 48, 53 (1st Cir. 2022).  As a result, the government can
waive this requirement "either expressly or by failing to raise it
as a defense."  United States v. Pabón-Mandrell, Crim. No. 07-121,
2023 U.S. Dist. LEXIS 229346, at *12 (D.P.R. Dec. 22, 2023) (Ramos-
Vega, M.J.).

        Once administrative remedies have been exhausted or waived,
a court may only reduce a term of imprisonment if "extraordinary
and compelling reasons warrant such a reduction."  18 U.S.C.
§ 3582(c)(1)(A)(i).  "The plain meaning of 'extraordinary'
suggests that a qualifying reason must be a reason that is beyond
the mine-run either in fact or in degree."  United States v.
Canales-Ramos, 19 F.4th 561, 566 (1st Cir. 2021).  "By the same
token, the plain meaning of 'compelling' suggests that a qualifying
reason must be a reason that is both powerful and convincing."
Id. at 567.

One such extraordinary and compelling circumstance is if a defendant received an unusually long sentence compared to what he might receive if sentenced today. <u>See</u> U.S.S.G. § 1B1.13(b)(6). An unusually long sentence may count as extraordinary and compelling if the defendant has served at least ten years of imprisonment, and if a change in law (other than a non-retroactive amendment to the sentencing guidelines manual) would produce a gross disparity between the original sentence and the one likely imposed today. <u>Id.</u> When making that determination, a Court must consider the defendant's individualized circumstances – "a change in the law, without more, [is insufficient to] comprise an extraordinary and compelling reason sufficient to warrant compassionate release." <u>Canales-Ramos</u>, 19 F.4th at 569. "[F]actors such as the size of the claimed sentencing disparity and the defendant's age at sentencing can, in combination, make the passage of a nonretroactive sentencing amendment an extraordinary and compelling reason to reduce that particular defendant's sentence." <u>United States v. Cruz-Rivera</u>, 137 F.4th 25, 32 (1st Cir. 2025) (internal quotation marks omitted).

The sentencing guidelines also contain a catch-all provision allowing courts to consider any other circumstance that is "similar in gravity" to the specifically enumerated circumstances. <u>See</u> U.S.S.G. § 1B1.13(b)(5). "The First Circuit instructs district

courts to consider almost any complex of circumstances that a
defendant alleges as a potential extraordinary and compelling
reason for early release." United States v. Sepúlveda, 762 F.
Supp. 3d 153, 157 (D.R.I. 2025). "The only limitations imposed on
a district court's discretion [are finding extraordinary and
compelling circumstances based on] rehabilitation alone,[1] the mere
fact of a pre-First Step Act mandatory life sentence standing
alone, and classic post-conviction arguments, without more." Id.
at 157-158 (internal quotation marks and alterations omitted).
"[D]istrict courts may conduct a holistic review to determine
whether the [defendant's] individualized circumstances, taken in
the aggregate, present an extraordinary and compelling reason to
grant compassionate release." United States v. Quirós-Morales, 83
F.4th 79, 83 (1st Cir. 2023) (internal quotations omitted).

If a court finds that there are extraordinary and compelling
reasons for a sentence reduction, it must still consider the
sentencing factors set forth in section 3553(a), and the reduction
must be consistent with "applicable policy statements issued by
the Sentencing Commission." See U.S.S.G. § 1B1.13(b)(6); 18 U.S.C.
§ 3582(c)(1)(A)(ii). Pursuant to section 3553(a), a court must

---

[1] "[R]ehabilitation of the defendant is not, by itself, an extraordinary and
compelling reason," but "may be considered in combination with other
circumstances in determining whether and to what extent a reduction in the
defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d).

determine if the sentence imposed reflects the seriousness of the
offense, promotes respect for the law, provides a just punishment,
affords adequate deterrence to criminal conduct, protects the
public from additional crimes by the defendant, and provides the
defendant with needed correctional treatment. 18 U.S.C. § 3553(a).
"[A] supportable determination that the balance of the section
3553(a) factors weighs against a sentence reduction constitutes an
independent reason to deny compassionate release." Texeira-
Nieves, 23 F.4th at 55.

Under both the section 3553(a) factors and the sentencing
guidelines, a defendant's potential dangerousness to the
community, evaluated based on his or her criminal history and
conduct while incarcerated, is an important factor. See U.S.S.G.
§ 1B1.13(a)(2) (defendant must not be "a danger to the safety of
any other person or to the community, as provided in 18 U.S.C.
§ 3142(g)"); 18 U.S.C. § 3553(a) (the sentence must "protect the
public from further crimes of the defendant"); United States v.
D'Angelo, 110 F.4th 42, 50-52 (1st Cir. 2024) (district court did
not err when it "reasonably concluded that D'Angelo's potential
dangerousness under [section] 3553(a) outweighed all else"). The
sentencing guidelines instruct courts to consider the factors in
18 U.S.C. § 3142(g) when determining whether a defendant's release
would endanger the community, and "courts may exercise discretion

and apply the mentioned factors to determine whether these suggest the defendant is more or less likely to reoffend." United States v. Colón-Nales, Crim. No. 03-278 (RAM/BJM), 2024 U.S. Dist. LEXIS 208133, at *14 (D.P.R. Nov. 14, 2024) (McGiverin, M.J.); see also U.S.S.G. § 1B1.13(a)(2).  The factors include the nature and circumstances of the offense charged, the weight of the evidence against a defendant, a defendant's criminal history, whether he or she has a history of violence, his or her physical and mental condition, and release conditions.  18 U.S.C. § 3142(g).  Evidence of a defendant's rehabilitation while incarcerated is also helpful in evaluating his or her likely conduct post-release.  See, e.g., Viera-Rivera, 2025 U.S. Dist. LEXIS 79378 at *23-24 (finding defendant's release did not pose a danger to the community after considering various factors, including his rehabilitation).

## III. DISCUSSION

### A.   Exhaustion of Administrative Remedies

Before being eligible to file a motion for compassionate release before a court, a defendant must exhaust administrative remedies.  See supra pp. 3-5.  Vázquez appears to have sent a letter to his warden at USP Victorville requesting compassionate release, though it is not clear when the request was sent.  See Docket No. 67-1 at pp. 1-2.  The warden replied on March 17, 2025, denying the request.  Id.  There is no evidence that Vázquez

Criminal No. 02-074 (FAB)                                        10

submitted appeals pursuant to section 542.15 of the BOP's
Administrative Remedy Program. See 28 C.F.R. § 542.15 (inmate may
appeal the warden's response to the regional director, and the
regional director's response to the general counsel, the latter
being the final administrative appeal). The government argues
that he has failed to exhaust administrative remedies and that
this failure alone is enough to deny his motion.

        Based on the record, it appears that Vázquez has not
fully exhausted administrative remedies with the BOP, because
there is no evidence that he appealed the warden's denial. See
United States v. Nieves, 615 F. Supp. 3d 73, 75-77 (D.P.R. 2022)
(Arias, C.J.) (outlining the steps a defendant must take to exhaust
administrative remedies and concluding that the defendant "must
complete the full appeals process laid out in 28 C.F.R. § 542,
subpart B if the warden of [his or her] facility responds to [his
or her] request within thirty (30) days of receipt before [he or
she] may file a motion for compassionate release in federal
court"); but see United States v. Silva-Rentas, Crim. No. 14-754-
2 (MAJ/BJM), 2024 U.S. Dist. LEXIS 117724, at *7-11 (D.P.R.
Jul. 12, 2024) (McGiverin, M.J.) (after noting that "the First
Circuit has yet to rule specifically on this question," applying
the rule in other circuits where "a defendant is permitted to file
for compassionate release 30 days after submitting [his] request

to the warden, regardless of the response to the request.")
Vázquez nevertheless asserts that he exhausted administrative
remedies, arguing that the warden denied the request "because the
basis he provided for the reduction [was] not contained in the
Program Statement 5050.50," and that because of this, "the grounds
for relief asserted [were] outside the authority of the BOP." See
Docket No. 67 at pp. 2-3. This assertion mischaracterizes the
warden's denial, which states that he "[did] not find that there
are extraordinary and compelling circumstances as required by the
statute to recommend the Bureau make a motion before [Vázquez's]
sentencing court seeking a Reduction in Sentence." (Docket No. 64-
1 at p. 2.) While the ultimate decision to reduce a defendant's
sentence lies with the sentencing court rather than with the BOP,
a defendant must exhaust administrative remedies with the BOP prior
to bringing his or her own motion before the court. Exhaustion
means completing the administrative appeal process when the warden
timely denies his request to bring a motion for compassionate
release on his behalf.

        Vázquez's failure to exhaust administrative remedies
would be sufficient grounds to deny his motion. The Court,
however, will proceed to analyze the merits of his claim for
completeness and because they point to the same result.

Criminal No. 02-074 (FAB)                                          12

**B.    Extraordinary and Compelling Circumstances**

Vázquez makes two arguments for extraordinary and compelling circumstances justifying a sentence reduction. First, he claims that he received an unusually long sentence and that a subsequent change in law would result in a much shorter sentence being delivered today. See Docket No. 64 at p. 5; U.S.S.G. § 1B1.13(b)(6). Second, he claims that his youth at the time of the offense, circumstances of his upbringing, the transfer of his case to federal district court for adult sentencing, the impact of adult incarceration on juvenile and youthful offenders, his efforts at rehabilitation, and the disparity between his sentence and the national average sentence for murder collectively demonstrate extraordinary and compelling circumstances. See Docket No. 64 at p. 6; U.S.S.G. § 1B1.13(b)(5).

It is undisputed that Vázquez has served over ten years of his sentence and that his youth renders the lengthy sentence he received more punishing than if he were an adult offender. To show extraordinary and compelling circumstances under section 1B1.13(b)(6), however, a defendant must also point to a change in the law that makes the sentence received grossly disproportional to what he would likely receive today. Vázquez argues that the change from mandatory to advisory sentencing guidelines fulfills this requirement. See Docket No. 64 at p. 5.

Criminal No. 02-074 (FAB)                                        13

When Vázquez was originally sentenced, the sentencing commission's guidelines were mandatory.  Courts had to sentence a convicted defendant within a guideline range determined by the sentencing commission.  In <u>United States v. Booker</u>, the Supreme Court held that the mandatory guidelines violated defendants' rights under the Sixth Amendment "to demand that a jury find him guilty of all the elements of the crime with which he is charged." 543 U.S. 220, 230 (2005) (citing <u>United States v. Gaudin</u>, 515 U.S. 506, 511 (1995)).  Courts have found the change from mandatory to advisory guidelines "constituted a sea change in the law" and have found extraordinary and compelling circumstances on this basis. <u>United States v. Kirkland</u>, Crim. No. ELH-94-10, 2024 U.S. Dist. LEXIS 189588, at *38-39 (D. Md. Oct. 18, 2024); <u>see also</u> <u>United States v. Viera-Rivera</u>, Crim. No. 94-391 (SCC), 2025 U.S. Dist. LEXIS 79378 (D.P.R. Apr. 23, 2025) (Ramos-Vega, M.J.).

Vázquez, however, has not shown that he would receive a significantly shorter sentence today solely due to the change from mandatory to advisory sentencing guideline ranges.  Other courts which found extraordinary and compelling circumstances based on this change in law were faced with defendants who received mandatory sentences from which the judge had no discretion to sentence downward.  <u>See, e.g.</u>, <u>Viera-Rivera</u>, 2025 U.S. Dist. LEXIS 79378 (defendant received a mandatory life sentence based on his

Criminal No. 02-074 (FAB)                                        14

offense level); <u>United States v. Robinson</u>, 2:06-cr-318, 2025 U.S.
Dist. LEXIS 49395 (W.D. Pa. Mar. 18, 2025) (defendant received two
mandatory minimum sentences under 18 U.S.C. § 924(c)).    By
contrast, Judge Cerezo in Vázquez's case imposed a 365-month
sentence, even though she could have imposed a sentence as low
as 292 months within the mandatory guideline range.    In other
words, the fact that the guidelines were mandatory did not prevent
Judge Cerezo from imposing a more lenient sentence.    This cuts
against an inference that the change in law would result in Vázquez
receiving a lower sentence today.

       Vázquez points to disparities between the sentence he
received and various national, circuit, and district averages as
evidence that he would receive a shorter sentence today.    The
nationwide average murder sentence in 2023 was 285 months, the
First Circuit average was 227 months, and the District of Puerto
Rico average was 236 months, with median figures of 276 months,
180 months, and 192 months respectively.    <u>See</u> Docket No. 64
at p. 17; U.S. Sent'g Comm'n, <u>2023 Federal Sentencing Statistics</u>
(2024),                      <u>https://www.ussc.gov/research/data-
reports/geography/2023-federal-sentencing-statistics</u>.    While
Vázquez's sentence of 365 months is significantly longer than these
averages, he has not shown that he would likely receive a sentence
closer to these averages if sentenced today merely because the

guideline ranges are now advisory.  Cf. United States v. Ware,
No. 111-270, 2025 U.S. Dist. LEXIS 33788, at *6 (S.D. Ga. Feb. 25,
2025) (comparison between defendant's sentence and that of his co-
defendants "not relevant to the (b)(6) analysis[ w]ithout a showing
that if sentenced today, [d]efendant's sentence would be vastly
different from the one imposed because of a change in the law").
Nor is the Court convinced that the disparity is extreme enough to
qualify Vázquez's sentence as unusually long.  See United States
v. Nicholas, Crim. No. 7:16-30026, 2024 U.S. Dist. LEXIS 202937,
at *27 (W.D. Va. Nov. 6, 2024) (defendant with a drug trafficking
sentence 58-percent longer than the Fourth Circuit average and 76-
percent longer than the national average failed to show an
unusually long sentence); cf. Viera-Rivera, 2025 U.S. Dist. LEXIS
79378, at *14 (life sentence for carjacking resulting in murder
for a 21-year-old defendant "certainly unusually long").
Vázquez's sentence was within his guideline range and can be viewed
as presumptively reasonable on this basis.  See Rita v. United
States, 551 U.S. 338, 347-56 (2007) (sentences within the guideline
range may be treated as presumptively reasonable).  Therefore,
Vázquez fails to show extraordinary and compelling circumstances
through section 1B1.13(b)(6) of the sentencing guidelines.

        Vázquez's second argument for extraordinary and
compelling circumstances, pointing to a host of factors which he

advances qualify under the catchall provision of 1B1.13(b)(5),
presents a closer question.  The Court will outline the arguments
on both sides of the issue.

        Supporting Vázquez's position, a new appreciation for
how youth matters in sentencing has emerged since he was sentenced
twenty-five years ago.  In Roper v. Simmons, the Supreme Court
overturned precedent and held that, under the Eighth Amendment,
juveniles cannot receive the death penalty.  543 U.S. 551, 564-75
(2005).  Roper was followed by Graham v. Florida, in which the
Supreme Court found that life-without-parole sentences for
juveniles convicted of non-homicide crimes were similarly
unconstitutional.  560 U.S. 48, 62-82 (2010).  And in Miller v.
Alabama, the Supreme Court held that subjecting juvenile
defendants to mandatory life-without-parole sentencing schemes was
unconstitutional, though a sentencing court could, within its
discretion, grant a life sentence after taking youth into account.
567 U.S. 460, 479-80.  Underpinning each decision was an
acknowledgement that "children are constitutionally different from
adults for purposes of sentencing" because they "have diminished
culpability and greater prospects for reform."  Id. at 471
(internal quotation marks omitted).  Children "have a lack of
maturity and an underdeveloped sense of responsibility, leading to
recklessness, impulsivity, and heedless risk-taking."  Id.

Criminal No. 02-074 (FAB)                                      17

(internal quotation marks omitted).  They are "more vulnerable to
negative influences and outside pressures, including from their
family  and  peers;  they  have  limited  control  over  their  own
environment, and lack the ability to extricate themselves from
horrific, crime-producing settings."  Id. (internal quotation
marks and alterations omitted).  And "a child's character is not
as well formed as an adult's; his traits are less fixed and his
actions less likely to be evidence of irretrievable depravity."
Id. (internal quotation marks and alterations omitted).  Roper,
Graham,  and  Miller  emphasized  both  common  sense  and  emerging
science  regarding  adolescent  development  to  differentiate
juveniles from adult offenders.  See Miller, 567 U.S. at 471-72.

        Vázquez had to contend with a difficult upbringing.  "The
Supreme  Court  has  made  clear  that  compared  to  adult  offenders,  a
juvenile  defendant's  background  is  particularly  relevant."
Robinson, 2025 U.S. Dist. LEXIS 49395, at *18 (citing Miller, 567
U.S. at 476).  His mother was dependent on drugs and was arrested
immediately after he was born.  See Docket No. 64 at pp. 11-12.
Because of her drug use and legal issues, she was not available to
raise him.  Id.  His father was not married to his mother and did
not have interest in establishing ties, leaving Vázquez to be
raised by his grandmother.  Id.

Criminal No. 02-074 (FAB)                                          18

       Vázquez's transfer from juvenile to adult prosecution
had a profound effect on his resulting sentence, particularly
because Judge Cerezo imposed a sentence at the top of the guideline
range.   In  the  statement  of  reasons,  Judge  Cerezo  made  no
indication that she considered Vázquez's youth as a mitigating
factor, an omission that is now particularly notable after Roper,
Graham, and Miller.   On the other hand, Judge Cerezo did not
necessarily ignore his youth as a mitigating factor.  She was not
prohibited from considering it, and she may have merely found other
factors more compelling.  See United States v. LeRoy, 984 F.2d
1095, 1099 (10th Cir. 1993) ("A district court may consider age in
the  context  of  deciding  where  to  sentence  within  the  guideline
range").  In any case, when viewed in light of his youth, turbulent
upbringing,  and  evolving  standards  for  sentencing  juveniles,
Vázquez's sentence at the top of the guideline range for adults is
undoubtedly severe.

       Other  facts,  however,  make  Vázquez's  circumstances
appear  less  extraordinary.   Compared  to  similarly  situated
defendants  whose  sentences  were  reduced  pursuant  to  similar
arguments, Vázquez has a less compelling case for extraordinary
and compelling circumstances.  See Viera-Rivera, 2025 U.S. Dist.
LEXIS 79378 (defendant had received a mandatory life sentence,
which qualified as an extraordinary and compelling circumstance

under U.S.S.G. section 1B1.13(b)(6)); <u>Robinson</u>, 2025 U.S. Dist. LEXIS 49395 (juvenile defendant had received a mandatory 384-month sentence on firearm and armed bank robbery charges, but where none of the victims were killed); <u>Brito v. United States</u>, Nos. 16-cv-7618 (PKC), 11-cr-576 (PKC), 2024 U.S. Dist. LEXIS 67541 (S.D.N.Y. Apr. 12, 2024) (juvenile defendant with severe mental illness, low I.Q., and an extremely difficult upbringing had received a 274-month sentence for racketeering and attempted murder resulting in non-fatal shooting of a bystander).

Vázquez also received the benefit of a plea agreement in which two other charges against him were dropped and his offense level was reduced for acceptance of responsibility, the effect of which was that he avoided a likely life sentence. <u>See</u> Docket No. 77 at pp. 7-8. As discussed, the disparity between his sentence and recent national, circuit, and district averages, while substantial, is not extreme. <u>See</u> <u>supra</u> pp. 13-14. He received a guideline sentence, which may be treated as presumptively reasonable. <u>Id.</u> And the extent of his rehabilitation is questionable considering the large number of disciplinary infractions he has incurred, which include several recent citations for violent conduct.

Considering the above, the Court finds that Vázquez fails to show extraordinary and compelling circumstances pursuant

to section 1B1.13(b)(5).  The standard for finding extraordinary
and compelling circumstances is high, and while there are aspects
of his claim that may make a reduction compelling, countervailing
factors complicate the picture.  Therefore, Vázquez's motion for
compassionate release must be denied.

> **C.    Guidelines and Sentencing Factors**

While a district court is not required to analyze the
section 3553(a) factors if it does not find extraordinary and
compelling circumstances warranting release, appellate "review is
aided . . . when the district court takes the additional step of
making a section 3553(a) determination."  Texeira-Nieves, 23 F.4th
at 52.  The Court finds that a sentence reduction would be
consistent with the section 3553(a) factors, though Vázquez's
motion will be denied for the reasons previously discussed.

Several of the section 3553(a) factors weigh in
Vázquez's favor.  While his offense was an act of severe violence
with the most serious of consequences, he committed it when he was
just sixteen years old – in other words, as a juvenile.  "[T]he
distinctive attributes of youth diminish the penological
justifications for imposing the harshest sentences on juvenile
offenders, even when they commit terrible crimes."  Miller v.
Alabama, 567 U.S. 460, 472 (2012).  He received a sentence at the
very top of the guideline range despite the fact he was a juvenile

Criminal No. 02-074 (FAB)                                        21

offender.  And his troubled upbringing also countenances in favor
of a less severe sentence.  See supra pp. 17-18.

        When considered alongside his youth at the time of the
offense, the Court also finds it persuasive that Vázquez has served
most of his sentence.  See United States v. Nuzzolilo, 517 F. Supp.
3d 40, 45 (D. Mass. 2021) (amount of time served versus time
remaining "very significant" in weighing the section 3553(a)
factors in the resentencing context); but see United States v.
Bradley, 97 F.4th 1214, 1222 n. 9 (10th Cir. 2024) (upholding
district court conclusion that "the length of the sentence already
served does not on its own demonstrate respect for the law and
just punishment") (emphasis in original).  As of this date, Vázquez
has served around 88 percent of his sentence after accounting for
good time credit.  See Docket No. 64-2 at p. 11.  This amounts to
over 300 months, meaning that he has already served a sentence
within the guideline range.  These facts render his request for
release more modest, thus lowering the bar to show that the reduced
sentence "reflect[s] the seriousness of the offense, [] promote[s]
respect for the law, and [] provide[s] just punishment for the
offense."  18 U.S.C. § 3553(a).

        On the other hand, whether Vázquez's early release would
pose a danger to the community is a complicated question.  The BOP
characterizes him as low-risk for recidivism, and Vázquez proposes

Criminal No. 02-074 (FAB)                                              22

a release plan to live with his mother (now recovered from her substance abuse issues) and sister in Florida.  <u>See</u> Docket No. 64 at p. 21.  Even if his sentence is not shortened, Vázquez will be released in October 2028 - the marginal risk of recidivism over a mere three-year period is less significant than it would seem if he would otherwise remain incarcerated for substantially longer. But he is also a violent firearm offender who has received numerous citations for violence while incarcerated, including some quite recent ones.  Vázquez's potential dangerousness rebuffs a clear answer, and this factor weighs neither for nor against him.

        Weighing the factors together, the Court finds that a reduction would be consistent with the section 3553(a) factors. Despite this finding, Vázquez's motion must be denied because he failed to exhaust administrative remedies and failed to establish extraordinary and compelling circumstances.

**IV.  CONCLUSION**

        For the reasons set forth above, Vázquez's motion for compassionate release is **DENIED**.  (Docket No. 64.)

        **IT IS SO ORDERED.**

        San Juan, Puerto Rico, July 31, 2025.

                                <u>s/ Francisco A. Besosa</u>
                                FRANCISCO A. BESOSA
                                SENIOR UNITED STATES DISTRICT JUDGE